IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02773-CMA
Criminal Action No. 16-cr-00073-CMA

UNITED STATES OF AMERICA,

    Plaintiff/ Respondent,

v.

JASON TIMOTHY THRONE,

    Defendant/ Movant.

---

**ORDER DENYING MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

---

This matter is before the Court on Defendant Jason Timothy Throne's Motion to Vacate Sentence under 28 U.S.C. § 2255. (Doc. # 50.) The Motion is denied for the following reasons.

## I.     BACKGROUND

Mr. Throne pleaded guilty in April 2016 to one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of willfully making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1). *See* (Doc. # 32.) The Court sentenced him to 71 months in prison and three years of supervised release. (*Id.*) Mr. Throne appealed his sentence, and the Tenth Circuit affirmed. (Doc. # 46); *United States v. Throne*, 702 Fed. Appx. 765 (10th Cir. 2017).

Mr. Throne now contends that his sentence should be vacated or reduced on the grounds that he received ineffective assistance of counsel at sentencing and that newly discovered evidence shows that he is actually innocent of the mail fraud charge. *See*

(Doc. # 50.) Mr. Throne was released from the custody of the Bureau of Prisons ("BOP") on August 16, 2021, while his Motion was pending before the Court.

## II.     LEGAL STANDARDS

### A.     STANDARD OF REVIEW FOR § 2255 MOTIONS

Under 28 U.S.C. § 2255, a prisoner in federal custody may challenge his sentence on the basis that "the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The reviewing court must set aside the conviction if it determines that the sentence is unconstitutional or unlawful. 28 U.S.C. § 2255(b). However, if the motion and other documents before the court "conclusively show that [the d]efendant is not entitled to relief," the court may deny the motion without an evidentiary hearing. *United States v. Bernhardt*, No. 96-CR-203-WJM, 2020 WL 2084875, at *1 (D. Colo. Apr. 30, 2020); *see also Hedman v. United States*, 527 F.2d 20, 21 (10th Cir. 1975).

### B.     PRO SE STANDARD OF REVIEW

Because Mr. Throne is proceeding *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, the Court is "not required to fashion [a d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "It is [not] the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Hall*, 935 F.2d at 1110.

### III. DISCUSSION

### A. JURISDICTION

Before addressing the merits of Mr. Throne's Motion, the Court must determine whether it has jurisdiction over this matter in light of Mr. Throne's release from the BOP in August 2021. Mr. Throne timely filed his Motion while he was in custody and thus satisfied the statutory prerequisites. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence."). However, because Mr. Throne has completed his prison sentence and is currently on supervised release, the Court must determine whether his claims are moot.

Federal courts may consider only actual "cases or controversies." U.S. Const. art. III, § 2, cl. 1. The case or controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted). "If, during the pendency of the case, circumstances change such that [a petitioner's] legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009).

In habeas cases, release from prison does not necessarily moot a petitioner's motion. *Rhodes v. Judiscak*, 676 F.3d 931, 933 (10th Cir. 2012); *see Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (concluding that a habeas petition is not rendered moot by a petitioner's release from prison because the "disabilities or burdens" that may flow from his conviction provide him "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him"). Cases challenging the

underlying conviction are presumed to have sufficient collateral consequences such that the petitioner retains a legally cognizable interest and the case is not rendered moot. *See Spencer*, 523 U.S. at 8.

When a petitioner challenges his sentence, he must demonstrate continuing "collateral consequences" to overcome mootness. *See, e.g.*, *United States v. McConnel*, 488 Fed. Appx. 291, 293 (10th Cir. 2012). Being on supervised release can amount to a collateral consequence "because the defendant's liberty is affected by ongoing obligations to comply with supervised release conditions and restrictions." *United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007). However, the Tenth Circuit has determined that being on supervised release does not amount to a **redressable** collateral consequence sufficient to defeat mootness when a petitioner challenges only the length of his prison sentence. *See Rhodes*, 676 F.3d at 933 (rejecting petitioner's argument that the court's declaration that he served an illegally excessive sentence might bolster his eventual 18 U.S.C. § 3583(e)(1) petition asking the sentencing court to shorten his term of supervised release); *see also United States v. Zamora*, 791 Fed. Appx. 693, 697 (10th Cir. 2019) (concluding that a 28 U.S.C. § 2255 petition was moot where petitioner challenged the length of his prison sentence, had been released, and did not contest his unexpired term of supervised release).

Applying these principles, the Court concludes that to the extent Mr. Throne challenges the length of his prison sentence and requests that it be reduced to 40 months, *see* (Doc. # 50 at 9), his claims are now moot, and the Court lacks jurisdiction to consider them. However, Mr. Throne also asserts that new evidence shows that he "is actually innocent" of the mail fraud charge and requests that his conviction be

vacated (*Id.* at 6, 9.) The Court is satisfied that it has jurisdiction to review this claim. *See Spencer*, 523 U.S. at 7 (observing that collateral consequences are presumed in cases challenging criminal convictions). Nonetheless, the Court finds that Mr. Throne's claim is subject to dismissal based on the collateral-attack waiver in his plea agreement.

**B.    ACTUAL INNOCENCE**

Mr. Throne asserts that he is "actually innocent" of the mail fraud charge because he uncovered new evidence that his employer, the victim in this case, "knew of [his] fraudulent representations." (Doc. # 51 at 20). He argues that because his employer was aware of the falsity of his representations, the "materiality" element of mail fraud was not met and his conviction therefore constitutes a miscarriage of justice. (Doc. # 50 at 6.) The Government responds that Mr. Throne's arguments are inconsistent with, and barred by, his guilty plea. (Doc. # 57 at 12.)

As relevant here, Mr. Throne's plea agreement states:

> The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute, (2) the defendant was deprived of the effective assistance of counsel, or (3) the defendant was prejudiced by prosecutorial misconduct.

(Doc. # 14 at 2–3.)

A collateral-attack waiver in a plea agreement will be enforced if: (1) the collateral attack falls within the scope of the waiver; (2) the defendant's waiver of his collateral rights was knowing and voluntary; and (3) enforcement of the waiver would not result in a miscarriage of justice. *See United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir.

2012) (applying the analysis set forth in *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) for reviewing the enforceability of plea agreement waivers of appellate rights). Enforcement of a waiver results in a miscarriage of justice in four circumstances: "when (1) the district court relied on an impermissible factor such as race, (2) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327; *see also United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (explaining that the four situations described in *Hahn* are the exclusive means to establish miscarriage of justice).

The Court finds that each of the three *Hahn* factors is satisfied and, as a result, the collateral-attack waiver bars Mr. Throne's claim. First, Mr. Throne's claim falls within the scope of his waiver, which includes a waiver of "the right to challenge this . . . conviction in any collateral attack." *See* (Doc. # 14 at 2–3.)  None of the exceptions to the waiver clause applies to Mr. Throne's claim of actual innocence.[1] Second, Mr. Throne's plea was knowing and voluntary, and Mr. Throne does not contend otherwise. At the change of plea hearing, after asking Mr. Throne several questions about his understanding of the plea agreement and the circumstances of the agreement, the Court found that Mr. Throne "is fully competent and capable of entering an informed plea" and that he "voluntarily, knowingly, and intelligently entered pleas of guilty to both offenses." (Doc. # 42 at 34.)

---

[1] Mr. Throne asserts other claims that he was deprived of effective assistance of counsel during sentencing; however, Mr. Throne does not raise the issue of ineffective assistance of counsel in connection with his claim of actual innocence.

Third, the Court finds that Mr. Throne's claim of actual innocence lacks merit and, therefore, enforcement of his plea waiver would not result in a miscarriage of justice. *See United States v. Winberg*, 786 Fed. Appx. 753, 758–59 (10th Cir. 2019) ("We need not decide whether actual innocence would satisfy *Hahn*'s "miscarriage of justice" exception because [petitioners'] innocence claim lacks merit."). To establish actual innocence, Mr. Throne "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.*

Mr. Throne contends that he is actually innocent of the mail fraud charge, which includes four elements: (1) the defendant devised or intended to devise a scheme to defraud; (2) the scheme involved materially false or fraudulent pretenses, representations, or promises; (3) the defendant knowingly caused something to be delivered by mail for the purposes of executing the scheme; and (4) the defendant acted with intent to defraud. 18 U.S.C. § 3481; *United States v. Kalu*, 791 F.3d 1194, 1202–04 (10th Cir. 2015). Mr. Throne argues that new evidence shows that his employer was aware that his representations were false and, therefore, a reasonable jury could not find that the second element, materiality, was met. (Doc. # 50 at 6.) In support, he provides various documents which he asserts show that his employer was aware of his fraudulent activities in late 2013 and 2014 and intended to terminate him. (Doc. # 51 at 13–14.) Mr. Throne states that he "is not challenging the stipulated facts in his guilty

plea"; rather, he asserts he is offering new, additional evidence "that does not contradict the evidence in the stipulated facts." (Doc. # 58 at 9.)

As an initial matter, Mr. Throne's argument fails because his allegedly new evidence challenges the materiality element only as to events dating after November 7, 2013. *See* (Doc. # 51 at 13.) The stipulated facts in Mr. Throne's plea agreement make clear that Mr. Throne's fraud scheme began in early 2000 and continued to April 2014. (Doc. # 14 at 7.)  During that time period, Throne "prepared 162 false PSG invoices" and "submitted them on a monthly basis" to the accounting department of his employer. (*Id.*) Neither his supervisors, nor any other employee, was aware of Mr. Throne's fraud scheme. (*Id.* at 8.) Mr. Throne asserts that he does not offer evidence to contradict these stipulated facts, and he does not argue that his employer was aware of the falsity of his representations prior to 2013. Thus, even with the alleged new evidence of his employer suspecting his activities in 2013 and 2014, Mr. Throne has not made a colorable showing of innocence because a reasonable juror could have convicted him based on the stipulated facts as to his fraud scheme from 2000 to 2013. Moreover, Mr. Throne's argument is one of legal insufficiency, not factual innocence. Mr. Throne pleaded guilty to the mail fraud charge, and he acknowledged his factual guilt in his statements at his change of plea and sentencing hearings. His new evidence as to his employer's awareness of his fraudulent activities in 2013 and 2014 is speculative at best and does not demonstrate actual innocence.

Because Mr. Throne's claim of actual innocence has no merit, he has not established that enforcing the collateral-attack waiver in his plea agreement would be a

miscarriage of justice. The Court, therefore, finds that the waiver is enforceable and Mr. Throne's actual innocence challenge to his conviction is barred by his plea agreement.

**C.     CERTIFICATE OF APPEALABILITY**

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." Such a showing is made only when "a prisoner demonstrates 'that jurists of reason would find it debatable' that a constitutional violation occurred, and that the district court erred in its resolution." *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court will not issue a certificate of appealability in this case because Mr. Throne has not made a substantial showing of the denial of a constitutional right.

**IV.     CONCLUSION**

For the foregoing reasons, Mr. Throne's Motion to Vacate under 28 U.S.C. § 2255 (Doc. # 50) is DENIED. It is

FURTHER ORDERED that no certificate of appealability will issue because Mr. Throne has not made a substantial showing of the denial of a constitutional right.

DATED:  December 23, 2021

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge